FILED
2020 Apr-16  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WELLS FARGO BANK NATIONAL ASSOCIATION,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.:  2:19-cv-02120-RDP** |
| **v.** | } | |
| | } | |
| **JUDITH A. CHANCE, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**<u>MEMORANDUM OPINION</u>**

This case is before the court on Defendants' Cross Motions to Vacate or Deem the Arbitration Awards Invalid or Unenforceable. (Docs. # 30, 35, 50). The Motions have been fully briefed (*see* Docs. 30, 35, 50, 53) and are ripe for review. After careful review, and for the reasons stated below, Defendants' Motions (Docs. # 30, 35, 50) are due to be denied, and the arbitration award (Doc. # 1-7) is due to be confirmed.

**I.      Background**

This action arises out of a commercial loan agreement between Plaintiff Wells Fargo and non-party Vestavia Hills, Ltd., wherein Defendants agreed to serve as guarantors of a loan in the amount of $26,010,00.00 (the principal amount). (Doc. # 1 at 5, ¶ 21).

On February 27, 2019, Wells Fargo filed an action in this court against Defendants to enforce the terms and conditions of the loan agreement. (*Id.*; *see Wells Fargo Bank, N.A. v. Chance et al.*, Case No. 2:19-cv-00339-JEO). However, Defendants demanded that Wells Fargo dismiss that case and submit its claims to binding arbitration, as was required by the loan agreement. (*Id.* ¶ 22). According to the arbitration provision in the loan agreement:

> [A]ny arbitration would be conducted by the American Arbitration Association ("AAA") pursuant to its commercial dispute resolution procedures at a location in Alabama selected by AAA. To the extent the amount in controversy exceeded $5.0 million, the arbitration provisions provided that the arbitration would be decided by a panel of three arbitrators. The arbitration provisions also provided that the arbitrators were to award all costs and expenses of any arbitration proceeding and that, to the extent possible, the arbitrators and parties were to take all action to conclude any arbitration proceeding within 180 days of the filing of a demand for arbitration with AAA.

(*Id.* ¶ 24). Consequently, on March 27, 2019, Wells Fargo filed a demand for arbitration with AAA, and on April 1, 2019, it dismissed the initial lawsuit. (*Id.* ¶ 25). On May 16, 2019, without objection, William Hasty, Jr., John Sherrill, and Henry Chalmers were appointed to the arbitration panel (the "Panel"). (*Id.* ¶ 26; Doc. # 1-4 at 2).

On July 19, 2019, the Panel "sent each side correspondence requesting that they each make an initial deposit of $32,225.00 to cover the costs of the final hearing." (*See* Docs. # 53 at 6; 30-1 at 2). On August 30, 2019, Wells Fargo filed a motion for summary disposition, requesting the Panel to find that Defendants violated their guaranty agreements. (Doc. # 1 at ¶ 27). On October 7, 2019, the Panel "communicated to the parties that [it] had decided to defer ruling on the motion for summary disposition until the parties completed discovery; the Panel also allowed the parties until November 6 to file briefs addressing any additional matters they wished to bring to the Panel's attention, and until November 11 to file any responses thereto." (Docs. # 53 at 6; 54 at 22). On October 29, 2019, the Panel emailed the parties stating that they had not yet received either party's deposit of $32,225.00, and that, "if the outstanding balance [was] not brought current by November 5, 2019, the [AAA] [would] inform the [P]anel which party ha[d] not paid and the amounts owed. At that point, the arbitrators [would] have a number of options on whether to proceed with the arbitration." (Doc. # 54 at 24). On November 8, 2019, the Panel again informed the parties that the amount due ($32,225.00) had not been paid in full and that the payment was due on or before

November 11, 2019. (Docs. # 30-1 at 2; 54 at 30).

"On November 26, 2019, the Panel issued an 'Interim Order Regarding Liability and Damages' granting Wells Fargo's motion for summary disposition and finding that [Wells Fargo] had established Defendants' liability under their guaranties and that the outstanding principal of the loan was $17,653,004.62." (*Id.* ¶ 28; Doc. # 1-5). Subsequently, on December 3, the Panel canceled the previously-scheduled telephone conference for that day and notified the parties that if there was to be a final hearing, it would be on December 12. (Doc. # 30-2 at 2).

"On December 9, 2019, the [P]anel issued its 'Second Interim Order Regarding Damages, finding that [Wells Fargo] had proved it was owed $18,077,246.12 in outstanding principal, interest, costs, and fees, and $87,114.68 in attorneys' fees." (*Id.* ¶ 29). In addition, the Panel postponed the final hearing indefinitely until Defendants explained why they contested Wells Fargo's entitlement to "$869 per day in accumulating default interest." (Doc. # 1-6 at 2).

On December 20, 2019, because Defendants refused to respond to the Second Interim Order, the Panel issued its Final Award. (Doc. # 1 at ¶ 30; Doc. # 1-7 at 3). The total amount to be awarded to Wells Fargo was $18,086,910.61, with interest to accrue "at the rate of $3,477.47 per day from the date of this Final Award." (Doc. # 1-7 at 3).

On December 27, 2019, Wells Fargo filed this suit seeking to enforce the arbitration award. (Doc. # 1). On January 10, 2020, a Notice of Bankruptcy was filed on behalf of Vestavia Hills, Ltd. (the company who actually received the commercial loan from Wells Fargo). (Doc. # 4). On February 18, 2020, Defendants answered and moved to vacate the arbitration award.

## II.   Standard of Review

Under 9 U.S.C. § 9:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court,

> then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9; *see Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1322 (11th Cir. 2010) ("Section 9 of the FAA provides that, upon application of any party to the arbitration, the court *must* confirm the arbitrator's award unless it is vacated, modified, or corrected in accordance with sections 10 and 11 of the statute."). "A motion to vacate is not a mechanism to appeal or otherwise challenge the merits of a dispute conclusively determined in arbitration. Indeed . . . on a motion to vacate an arbitration award under 9 U.S.C. § 10(a), a district court 'may revisit neither the legal merits of the award nor the factual determinations upon which it relies.'" *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 314 F. Supp. 3d 1346, 1354 (S.D. Fla. 2018) (internal citations omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (quoting *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

"There is nothing malleable about [the] 'must grant' [language in the FAA] which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Hall St. Assocs., LLC v. Mattel, Inc*., 552 U.S. 576, 587 (2008). "A proceeding to confirm an arbitration award under Section 9 of the FAA is intended to be summary, and confirmation should be withheld only if a party meets its substantial burden under Section 10 or 11 of the FAA." *Careminders Home Care, Inc. v. Concura, Inc*., 660 F. App'x 795, 796 (11th Cir. 2016) (*per curiam*). "A court's confirmation of an arbitration award is usually routine or summary." *Riccard v. Prudential Ins. Co*., 307 F.3d 1277 (11th Cir. 2002); *see also AIG Baker*

4

*Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007)

("Because arbitration is an alternative to litigation, judicial review of arbitration decisions is

'among the narrowest known to the law.'" (citations omitted)). To be sure, "Section 10 permits

vacatur of arbitration awards only in four narrow circumstances":

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of
> them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the
> hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and
> material to the controversy; or of any other misbehavior by which the rights of any
> party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them
> that a mutual, final, and definite award upon the subject matter submitted was not
> made.

*Frazier*, 604 F.3d at 1321 (quoting 9 U.S.C. § 10(a)). Importantly, "[t]here is a presumption under

the FAA that arbitration awards will be confirmed, and 'federal courts should defer to an

arbitrator's decision whenever possible.'" *Frazier*, 604 F.3d at 1321 (quoting *B.L. Harbert Int'l,

LLC v. Hercules Steel Co.*, 441 F.3d 905, 909 (11th Cir. 2006), *abrogated on other grounds by

CM S. E. Texas Houston, LLC v. CareMinders Home Care, Inc.*, 662 F. App'x 701 (11th Cir.

2016)).

### III.    Analysis

Defendants contend that the arbitration award should be rendered invalid or unenforceable

because "(1) two of the awards [were] not signed by all three members of the Panel . . . , and (2)

… the Panel members' summary disposition of the arbitration matter without a hearing was

influenced by Defendants' non-payment of the arbitration fees." (Doc. # 30 at 8). For the reasons

discussed below, the court rejects both arguments and concludes that the arbitration award is due

to be confirmed.

5

1.  **The Fact that Two Awards Were Not Signed by All Arbitrators Does Not Render the Final Award Invalid**

Defendants assert that the arbitrators exceeded their powers in violation of § 10(4), and therefore the Second Interim Award and the Final Award are due to be vacated. The court disagrees.

Importantly, "[o]nly if 'the arbitrator act[s] outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination.'" *PCI Consultants, Inc.*, 314 F. Supp. 3d at 1356 (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)); *see Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1302 (11th Cir. 2015) ("To vacate an award under § 10(a)(4), it is not enough to show that the arbitrator committed an error— or even a serious error.") (quoting *Oxford*, 569 U.S. at 568).

Under the Forbearance Agreement between Wells Fargo, Vestavia Hills, Ltd., and Defendants, the arbitration provision provided that "any arbitration proceeding in which the amount in controversy exceeds $5,000,000.00 shall be decided by a majority vote of a panel of three arbitrators; provided however, that all three arbitrators must actively participate in all hearings and deliberations." (Doc. # 1-1 at 20). Here, there were three arbitrators. There is no substantive argument or suggestion that they did not all "actively participate" in the arbitration of this matter. Rather, Defendants complain that: (1) the Second Interim Order Regarding Damages -- executed on December 9, 2019 -- was signed only by one arbitrator, Henry R. Chalmers, and that Chalmers signed the other two signatures "with permission" from the other arbitrators (*see* Docs. # 1-6 at 3, 1-7); and (2) the Final Award -- executed on December 20, 2019 -- was signed only by one arbitrator, John A. Sherrill, and that Sherrill signed the other two signatures "with permission" from the other arbitrators (*see* Doc. # 1-7 at 3). Defendants contend that they did not

consent to an award being signed "with permission," and that such practice violates Rule 46(a) of the Commercial Rules of Arbitration and Section 6-6-4 of the Alabama Code. That assertion is meritless.

Under Rule 46(a) of the Commercial Rules of Arbitration, "[a]ny award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the form and manner required by law." Comm. Arb. Rule 46(a). Relatedly, under Section 6-6-4 of the Alabama Code, "[i]t is the duty of the arbitrators to . . . make their award in writing, which must be signed by them." Ala. Code § 6-6-4. There is nothing in this Alabama Rule, the AAA Rules, or elsewhere in the Alabama Code that explicitly prohibits a member of an arbitration panel from signing the name of another member "with permission." *See Publicis Comm. v. True North Comms., Inc.*, 206 F.3d 725, 730 (7th Cir. 2000) (concluding that Publicis' similar "argument goes nowhere" and finding it immaterial that "the tribunal chairman Philip signed the decision 'for and on behalf' of the other arbitrators").

The Seventh Circuit has reached a similar result interpreting the arbitration rule of the National Association of Securities Dealers ("NASD"). In *Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488 (7th Cir. 2004), the plaintiff (Olson) filed a demand for arbitration against several defendants over the handling of certain brokerage accounts. *Id*. at 488-89. NASD appointed a three-member panel of arbitrators to conduct the arbitration. *Id*. at 489. The chair of the panel granted a motion to dismiss Defendant Wexford Clearing, denied a motion to reconsider that decision, and denied a motion by Olson to amend his claim. *Id*. The order dismissing Wexford Clearing was signed "by the chair on behalf of the panel." *Id*.

Olson then filed suit to vacate the award, asserting, among other things, that the chair's signing of the order "on behalf of the panel" rendered it invalid. The Seventh Circuit disagreed,

labeling this argument as a complaint about a "superficial technicality":

> But, Olson argues, even if the April 15 award was sufficiently final to end the case, it had another flaw serious enough to affect the limitations period. NASD Rule 10330(a) requires all awards to be "signed by a majority of the arbitrators." Thus, according to Olson, the April 15 award could not have been a proper award under NASD rules because it was signed by the chair on behalf of the panel. While conceding that "'superficial technicalities' should not control whether a decision in arbitration is final or not," Olson nonetheless urges us to find in his favor on this basis because he believes that the signature requirement is substantively important. In *Publicis Communication*, [*supra*], the parties to an arbitration disagreed over the interpretation of a rule requiring the chairman's signature on procedural matters. Noting that either party's interpretation was plausible, we focused on the more relevant issue: that the finality of an arbitration agreement "should be judged by substance and effect, not by superficial technicalities." *Id*. at 730**.** Following that general approach, we are unpersuaded that the arguable violation of the NASD rule here should have the drastic consequence of rendering the April 15 decision a nullity. As Wexford points out, the NASD rules do not prohibit the chair from signing an order on behalf of the panel. At the end of the day, this technicality offers no reason to disregard the unambiguous dismissal of Wexford on April 15.

*Olson*, 397 F.3d at 491-92 (emphasis added).

The court notes that the parties' Forbearance Agreement does not limit or preclude a member of the Panel from signing for another "with permission." Under the AAA Rules:

> [B]ecause arbitration is a creature of contract, the parties, when incorporating any set of arbitration rules by reference in an arbitration agreement, are free to include provisions in conflict with certain provisions of rules incorporated by reference; the specific provisions in the arbitration agreement take precedence and the arbitration rules are incorporated only to the extent that they do not conflict with the express provisions of the arbitration agreement.

*Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831-32 (11th Cir. 1991). Further, "the 'authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed,'" and under these circumstances, there is nothing to suggest that the arbitrators could not operate using this practice. *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) (citation omitted).

Wells Fargo also argues that under Rule 41 of the Commercial Rules of Arbitration, "[a]ny party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object." Comm. Arb. Rule 41. Wells Fargo contends -- and there is nothing in the record suggesting otherwise -- that during arbitration, Defendants "never argued, claimed, or even suggested that Wells Fargo or the Panel violated the AAA Rules in any respect, including in the making of the Final Award." (Doc. # 53 at 9). It claims this is another indication that Defendants are playing cat and mouse trying to avoid or delay a judgment.

Therefore, the court concludes that the arbitrators acted within the bounds of the AAA Rules and the applicable Alabama Rules. The arbitrators did not exceed their power or violate the AAA Rules or the Alabama Code.

### 2.   The Fact that Defendants Did Not Pay Their Fees Is Immaterial to the Panel's Decision to Forego Holding a Hearing

Defendants assert that the arbitration award should be vacated because, under § 10(a)(3), the Panel "refus[ed] to hear evidence pertinent and material to the controversy," thus depriving Defendants of a hearing. Specifically, Defendants contend that they "were never heard at a scheduled hearing because the Panel made a summary decision after learning Defendants owed outstanding fees to the AAA." (Doc. # 30 at 10). But, this argument holds no water.

Under Rule 57 of the Commercial Rules of Arbitration, "[i]f arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment." Relatedly, "[u]pon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative or at the request of the AAA or a party, *may* order the suspension of the arbitration." Comm. Arb.

Rule 57 (emphasis added).[1]

On October 29, 2019, the Panel emailed the parties to inform them that neither of them had paid the $32,225.00 fee for the Panel's "anticipated compensation and expenses." (Doc. # 54 at 24). Payment was to be paid on or before November 5, 2019. (*Id.*). On November 8, 2019, the Panel again informed the parties that the amount due ($32,225.00) had not been paid in full and that the payment was due on or before November 11, 2019.[2] (Docs. # 30-1 at 2; 54 at 30).

Notwithstanding the payment (or nonpayment) of fees, the Panel proceeded. They clearly had the authority to do so. (*See* Doc. # 54 at 34-35). On November 26, 2019, after giving both parties multiple opportunities to submit additional evidence, the Panel granted Wells Fargo's motion for summary disposition by issuing an Interim Order Regarding Liability and Damages in favor of Wells Fargo in the amount of $17,653,004.62. (Doc. # 1-5). However, the Panel allowed Defendants until December 2, 2019 to file a brief stating their position with respect to the amounts of interest, attorney's fees, and expenses owed to Wells Fargo. (*Id.* at 1).

Subsequently, on December 9, 2019, the Panel issued a Second Interim Order, finding that Wells Fargo had established it was owed $18,077,246.12 in outstanding principal, interest, costs, and fees, and $87,114.68 in attorneys' fees.[3] (*Id.* ¶ 29). In addition, the Panel postponed the final hearing indefinitely until Defendants explained, by December 12, 2019, why they contested Wells Fargo's entitlement to "$869 per day in accumulating default interest." (Doc. # 1-6 at 2). On December 13, 2019, Defendants informed the Panel that they would not be submitting any

---

[1] Indeed, the Panel may suspend the hearing, but it does not have to. If so desired, the Panel could continue the proceedings without prepayment of the fees.

[2] Wells Fargo claims that it made its payment, as well as the payment for Defendants. (Doc. # 53 at 12). However, there is no evidence in the record supporting that claim. Indeed, in an email from the Panel to Defendants on November 12, 2019, the Panel stated: "Please advise me as soon as possible regarding your client's payment." (*See id.* at 34). In any event, whether payment was made or not, the Panel issued its ruling.

[3] Wells Fargo initially demanded $102,111.68 in attorney's fees but then reduced the amount by $15,000, thus totaling $87,114.68. (Doc. # 1-6 at 2).

response to the Second Interim Order. (Doc. # 1-7 at 3). So, on December 20, 2019, the Panel issued its Final Award, totaling $18,086,910.61, with $3,477.47 in interest accruing daily. (Doc. # 1-7).

Based on the record before the court, it is readily apparent that the Panel gave Defendants multiple opportunities to supplement their evidentiary material, including opportunities to do so after the Panel informed both parties that the total fee had not yet been paid. Indeed, it was not until December 9, 2019 (when the Panel issued the Second Interim Order) that the final hearing was indefinitely suspended pending resolution of the accumulating default interest question. Defendants never responded to that inquiry.

"Arbitrators enjoy wide latitude in conducting an arbitration hearing. When a party challenges an evidentiary decision of the arbitration panel, a federal court may vacate the award only if the arbitrator's refusal to hear pertinent and material evidence prejudiced the rights of the parties to the arbitration proceedings." *Aviles v. Charles Schwab & Co.*, 435 F. App'x 824m 828 (11th Cir. 2011) (citing *Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1333 (11th Cir. 2007)). Here, there is no indication that the Panel refused to hear evidence. But, even if it did, there are no facts establishing that such a refusal prejudiced Defendants in any way. Defendants simply did not (and, in at least one instance, deliberately chose not to) put forth evidence supporting their case.

Therefore, the court cannot conclude that the Panel "refus[ed] to hear evidence pertinent and material to the controversy" within the meaning of § 10(a)(3). Defendants were given ample opportunities to present all their evidence but chose not to take advantage of those opportunities. Consequently, because "[t]here is a presumption under the [FAA] that arbitration awards will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible," the court

concludes that Defendants have failed to show that the Final Award should be vacated and/or rendered invalid or unenforceable. *Barclays Capital Inc. v. Urquidi*, 786 F. App'x 970, 973 (11th Cir. 2019) (citation omitted).

### 3. The Arbitration Award is Due to be Confirmed

Plaintiff requests that the court confirm the December 20, 2019 Final Award and enter judgment in its favor and against Defendants in the amount of $18,086,910.61, with "post-award interest at the rate of $3,477.47 from December 20, 2019 through the date of judgment and post-judgment interest from the date of judgment," as well as attorney's fees. (Doc. # 1).

"The Federal Arbitration Act presumes that arbitration awards will be confirmed, and judicial review of an arbitration award is narrowly limited." *Rosensweig*, 494 F.3d at 1333 (citations omitted). Because the court concludes that the Panel committed no error in the underlying arbitration proceedings, the Final Award is due to be confirmed. *See Continental Casualty Co. v. Staffing Concepts, Inc.*, 2014 WL 12622469, *1 (M.D. Fla. July 23, 2014) ("[U]pon petition to confirm an arbitration award, a 'court must grant such an order.'") (citation omitted). And, "[u]pon confirmation of an arbitration award, a party may be awarded both prejudgment and postjudgment interest." *Id.* (citing *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1446-47 (11th Cir. 1998)).

Defendants have objected to the arbitrators' award, but those objections are without merit. Therefore, there being no other arguments as to why the arbitration award is invalid, the court concludes the arbitration award (Doc. # 1-7) is due to be confirmed in favor of Wells Fargo Bank, N.A. and against Defendants. 9 U.S.C. § 9.

### IV. Conclusion

This case brings to mind the following words of the Eleventh Circuit:

> When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken. Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases. The more cases there are, like this one, in which the arbitrator is only the first stop along the way, the less arbitration there will be.  If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later.

*B.L. Harbert Int'l, LLC*, 441 F.3d at 913. Defendants cannot continue to drag out this dispute any longer.

For all the foregoing reasons, Defendants' Motions (Docs. # 30, 35, 30) are due to be denied, and the arbitration award is due to be confirmed. A Final Judgment consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this April 16, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE